IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DENA R. LINTON-HELMS,

    Petitioner,

v.

SUPERINTENDENT PAULA MEYERS,

    Respondent.

Case No. 3:19-cv-00877-SI

OPINION AND ORDER

    Susan F. Wilk
    Assistant Federal Public Defender
    101 S.W. Main Street, Suite 1700
    Portland, Oregon 97204

        Attorney for Petitioner

    Ellen F. Rosenblum, Attorney General
    James M. Aaron, Assistant Attorney General
    Department of Justice
    1162 Court Street NE
    Salem, Oregon 97310

        Attorneys for Respondent

1 – OPINION AND ORDER

SIMON, District Judge.

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 challenging the legality of her state-court convictions for Assault in the First Degree and Unlawful Use of a Weapon. For the reasons that follow, the Amended Petition for Writ of Habeas Corpus (#5) is denied.

## BACKGROUND

On July 17, 2014, Petitioner assaulted Shelby Acosta at a public park in Grants Pass. She demanded that Mr. Acosta give her money he owed her and obtain some sort of medication or narcotic. She then lashed out at him with large hunting knife. Petitioner severed a portion of Acosta's left ear and lacerated his scalp. As a result, the Josephine County Grand Jury indicted her on one count each of Assault in the First Degree and Unlawful Use of a Weapon. Respondent's Exhibit 102. Pursuant to Oregon's mandatory minimum sentencing scheme, Petitioner faced a 90-month sentence if convicted of Assault in the First Degree.

The trial court appointed Pete Smith to represent Petitioner and, in the summer of 2014, the State offered her a plea deal whereby she could plead guilty to Assault in the Second Degree which carried a mandatory minimum sentence of 70 months in prison. Petitioner's Exhibit 1, p. 2. By pleading guilty to the lesser charge, Petitioner would not only reduce her sentencing exposure by 20 months, but would also be eligible to earn sentencing credits. Respondent's Exhibit 123, p. 2.

The State's plea offer remained open for several months. In January 2015, Smith withdrew due to a conflict and Daniel Simcoe

substituted as new counsel. Simcoe discussed the State's pending plea offer with Petitioner and, according to Petitioner's Declaration, although she had rejected that offer while represented by Smith, she told Simcoe she wished to accept the offer but "wanted to know whether the offer included programs like drug treatment." Declaration of Dena Renee Linton-Helms, ¶ 1, ¶ 4. She also wished to know whether the prosecutor would agree to furlough her as part of the deal so she could visit her terminally ill mother prior to the start of her sentence. Although Simcoe reached out to prosecutor Lisa Turner on these issues, Petitioner swears Simcoe "never got back to me" despite her attempts to contact him. *Id* at ¶ 5.

For his part, Simcoe similarly declares Petitioner rejected the State's offer while Smith represented her, and later asked him to inquire as to whether she could be furloughed so as to visit her terminally ill mother in California as part of the plea deal. Declaration of Daniel Simcoe, ¶ 5. Simcoe approached Turner with both the programming question and the furlough proposal, but Turner stated Petitioner was not eligible for Alternative Incarceration Programs and flatly rejected the request for a furlough. In contradiction to Petitioner's Declaration, however, Simcoe declares that he "communicated regularly with [P]etitioner at the jail and discussed with her all of my communications with Ms. Turner. I communicated Ms. Turner's response to the furlough question to [P]etitioner." *Id* at ¶ 7. According to Simcoe, "Petitioner always maintained that she did not commit the crimes alleged and consistently wanted to

3 – OPINION AND ORDER

take the case to trial despite my advice that she take the offer." *Id* at ¶ 10.

Whether attributable to omissions by counsel or Petitioner's own choosing, Petitioner did not accept the State's plea offer. She proceeded to a bench trial where the trial court convicted her on both counts, merged the convictions for purposes of sentencing, and imposed the statutorily-mandated 90-month sentence. Petitioner directly appealed her convictions, but the Oregon Court of Appeals affirmed the trial court's decision without issuing a written opinion and the Oregon Supreme Court denied review. *State v. Linton-Helms,* 284 Or. App. 557, 392 P.3d 392, *rev. denied*, 361 Or. 671, 399 P.3d 1007 (2017).

Petitioner next sought post-conviction relief ("PCR") in Washington County where, with the assistance of PCR counsel, she filed an Amended PCR Petition raising a single claim: whether Simcoe had been ineffective when he failed to include in his closing argument that a fingernail recovered from the crime scene was devoid of Petitioner's DNA. Respondent's Exhibit 110. The PCR court denied relief on this claim, and Petitioner voluntarily dismissed a subsequent appeal. Respondent's Exhibits 119-121.

Petitioner filed this federal habeas corpus action on June 5, 2019. The Court appointed Susan F. Wilk to represent her and, with Wilk's assistance, Petitioner filed an Amended Petition in which she raises five grounds for relief containing 12 claims. In her briefing, Petitioner chooses to argue only her Ground Two

4 – OPINION AND ORDER

claim that Simcoe was ineffective when he failed to communicate with her regarding a favorable plea offer. Respondent asks the Court to deny relief on the Petition because: (1) the Amended Petition contains no supporting facts, therefore it fails to state a claim; (2) Petitioner's unargued claims do not entitle her to relief; and (3) Petitioner procedurally defaulted her Ground Two claim and is unable to excuse that default.

## DISCUSSION

### I. Failure to State Claim

Rule 2(c) of the Rules Governing Section 2254 Proceedings requires each habeas corpus petition to "specify all the grounds for relief which are available to the petitioner[.]" In order to comply with this Rule, a petition must contain specific facts supporting each claim. *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994). In this case, Petitioner alleges in Ground Two that her trial attorney "failed to communicate with her regarding a favorable plea offer." Amended Petition (#5), p. 3. Given that there was only one plea offer at issue in this case, the implication is that Simcoe failed to provide adequate communication so as to allow Petitioner to take advantage of the State's offer. This is sufficient to state a valid claim for pleading purposes.

### II. Unargued Claims

As noted above, the Amended Petition presents 12 claims for the Court's consideration. With the assistance of counsel, Petitioner limits her argument to her Ground Two claim of ineffective assistance of counsel. Petitioner does not argue the

5 – OPINION AND ORDER

merits of her remaining claims, nor does she address Respondent's argument that the remaining claims are procedurally defaulted. As such, Petitioner has not carried her burden of proof with respect to these unargued claims. *See Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (Petitioner bears the burden of proving her claims). Even if Petitioner had supported these claims with briefing, the Court has examined them based upon the existing record and determined that they do not entitle her to habeas corpus relief.

### III. Ground Two: Ineffective Assistance of Counsel

#### A. Evidentiary Objections

##### 1. Hearsay Statements

Petitioner maintains that when Simcoe failed to communicate with her regarding a plea offer she was willing to accept, the offer lapsed and the trial court convicted her of the more severe offense of Assault in the First Degree. During the course of this habeas corpus case, Wilk and her investigator, Mitzi Miller, interviewed Simcoe in relation to Petitioner's Ground Two claim. Petitioner seeks to admit Simcoe's statements during that interview through Miller's Declaration. Respondent objects to paragraphs eight and nine of that Declaration on the basis that, while they are properly considered for impeachment purposes, they constitute inadmissible hearsay.[1]

---

[1] Paragraphs eight and nine address Simcoe's discussions with the prosecutor. Miller declares that Simcoe "indicated that she wished to accept the offer" but had questions about whether a furlough would be possible and whether she would qualify for Alternative Incarceration Programs. Miller Declaration, ¶ 8. According to Miller, Simcoe stated that although he had no documentation memorializing his discussions with Petitioner, he was certain that he relayed

6 – OPINION AND ORDER

It is difficult to parse out what amounts to potential impeachment evidence versus hearsay, but the disparities between what Miller claims Simcoe said, and what Simcoe himself declares, are few as well as immaterial to the resolution of this case. The Court will therefore consider the totality of paragraphs eight and nine of the Miller Declaration in reaching a decision on the issues in this case.

### 2. Disciplinary Records

As part of her investigation, Miller also obtained Simcoe's Oregon State Bar disciplinary file containing two public reprimands and four complaints that did not result in any disciplinary action. Petitioner believes that this history displays a pattern of poor communication from Simcoe that renders it more likely that he failed to properly communicate with her. Respondent objects to Petitioner's use of Simcoe's Bar disciplinary records as irrelevant, unfairly prejudicial, and improper propensity evidence in violation of Fed. R. Evid. 403 and 404(b), respectively.

Although Petitioner attempts to establish that Simcoe acted in conformity with his character as demonstrated by his disciplinary record with the Oregon State Bar, such evidence is inadmissible under Fed. R. Evid 404(b) which bars the use of prior crimes, wrongs, or other acts to establish that a person acted in accordance with his character on a particular occasion. In addition, the two public reprimands the Bar levied against

---

that information to Petitioner and that she "decided to go to trial instead of pleading guilty." *Id* at ¶ 9.

7 – OPINION AND ORDER

Simcoe are irrelevant insofar as they did not pertain to the failure to communicate a plea offer. Instead, those reprimands involved: (1) legal advice to an unrepresented person and the failure to promptly return client property upon the termination of the representation; and (2) the failure to follow up with a client and submit forms pertaining to spousal death benefits.[2] Miller Declaration, ¶ 12. Accordingly, the Court will not consider the proposed evidence pertaining to Simcoe's disciplinary record with the Oregon State Bar.

### B. Cause and Prejudice

The parties agree that Petitioner failed to fairly present her Ground Two claim to Oregon's state courts, leaving it procedurally defaulted. Petitioner argues, however, that the Court should excuse the default because her PCR attorney performed deficiently by failing to raise it.

In *Martinez v. Ryan*, 566, U.S. 1 (2012), the Supreme Court set forth the procedure by which a habeas corpus petitioner can excuse a procedural default associated with a claim of ineffective assistance of trial counsel. First, Petitioner must show that her attorney in her initial-level PCR proceeding was ineffective under the standards the Supreme Court announced in *Strickland v. Washington*, 466 U.S. 668 (1984). *Id* at 14. "[T]o fulfill this requirement, a petitioner must not only show that PCR counsel performed deficiently, but also that this prejudiced petitioner, *i.e.,* that there was a reasonable probability that,

---

[2] The four Bar complaints Petitioner references that did not result in disciplinary action would be of very limited probative value even if they were otherwise admissible.

8 – OPINION AND ORDER

absent the deficient performance, the result of the post-conviction proceedings would have been different." *Runningeagle v. Ryan*, 825 F.3d 970, 982 (9th Cir. 2017) (quotation omitted). Next, Petitioner must show that the defaulted claim of ineffective assistance of trial counsel is substantial insofar as it has some merit. *Martinez*, 566 U.S. at 14.

Petitioner argues that PCR counsel ignored Simcoe's failure to adequately communicate the State's plea offer and, instead, proceeded to pursue a borderline frivolous claim pertaining to the absence of DNA evidence from a fingernail recovered from the crime scene. She argues that the evidence against her was so overwhelming that she had no realistic chance of prevailing on such a claim, and that PCR counsel performed deficiently by pursuing that claim to the exclusion of her Ground Two claim.

In support of her argument, Petitioner points out that PCR counsel had access to Simcoe's trial notes and emails, including an email from Simcoe to Turner in which he indicated that "I believe Linton-Helm will accept your latest offer." Miller Declaration, Att. A. However, that email also asks Turner to agree to allow Petitioner a furlough. *Id*. In response, Turner refused the additional furlough request. This documentary record did not provide a clear indication that Petitioner wished to accept the State's offer in the absence of the furlough.[3]

---

[3] Simcoe's impression from speaking with Petitioner was that her primary concern, both in the months leading up to Simcoe's appointment as well as during plea negotiations involving Simcoe, was "getting let out of jail, not resolving the case by plea." Simcoe Declaration, ¶ 5. Although his email to Turner suggests that Petitioner was willing to resolve the case by way of plea agreement, the email and Declaration are not necessarily inconsistent.

9 – OPINION AND ORDER

Petitioner also believes that PCR counsel should have examined counsel's notes and, finding them devoid of a specific entry pertaining to plea discussions or any decision to forego the State's plea offer, raised her Ground Two claim which was clearly supported by relevant case law at the time. *See Missouri v. Frye*, 566 U.S. 134, 145 (2012) (attorneys must communicate formal plea offers from the prosecution). The absence of a billing entry or specific notes pertaining to plea discussions is insufficient to prompt a reasonable practitioner to assume that an attorney failed to adequately communicate a plea offer. Indeed, Petitioner, herself, declares that she and Simcoe discussed the State's plea offer while also noting the absence of notes in Simcoe's files referencing such discussions. Linton-Helms Declaration, ¶¶ 4-5.

It is also telling that although Petitioner claims she repeatedly attempted to discuss the plea offer with Simcoe only to be ignored, notably absent from her Declaration is any statement that she ever told PCR counsel that the plea offer had been an issue in her case. Consistent with that omission, PCR counsel declares:

> I have no specific memory of talking about whether petitioner would have taken a plea offer, but I usually do when the facts are as unfavorable as in this case. A failure to communicate a plea offer or to adequately advise the defendant about such an offer is a type of claim that I regularly seek out and raise in post-conviction when the facts support it. If petitioner had told me that she was unaware of a plea offer or that she had wanted to accept the state's offer, I

>           would have raised a claim regarding that issue.

Declaration of Travis Rhoades Dickey, ¶ 4.

Thus, not only does Petitioner's own Declaration make no mention of any communications with PCR counsel about the plea issue,[4] but PCR counsel's Declaration suggests that Petitioner never alerted him that she had difficulty communicating with Simcoe about the plea. On this record, it was not incumbent upon PCR counsel to raise the ineffective assistance of counsel claim Petitioner now argues as Ground II. *See Strickland*, 466 U.S. at 691 (attorney performance is properly evaluated based upon information the client provides to counsel).

Because PCR counsel had no reason to suspect that Simcoe failed to properly communicate the State's plea offer, PCR counsel's performance did not fall below an objective standard of reasonableness. Accordingly, Petitioner cannot excuse her default as to Ground Two.

## V. Evidentiary Hearing

Finally, Petitioner asks the Court to conduct an evidentiary hearing should it require additional evidence to resolve whether she has made a showing of cause and prejudice to excuse her procedural default. Petitioner and Respondent have already expanded the record on the issue of cause and prejudice, and that new evidence in conjunction with the existing record make it clear that Petitioner is unable overcome her procedural default. Where the record in this case is sufficiently developed

---

[4] In fact, Petitioner's Declaration makes no mention of PCR counsel at all.

11 – OPINION AND ORDER

to resolve the issues before the Court, Petitioner's request for an evidentiary hearing is denied. *See Rhoades v. Henry*, 638 F.3d 1027, 1041 (9th Cir. 2011); *see also Gandarela v. Johnson*, 286 F.3d 1080, 1087 (9th Cir. 2002).

## CONCLUSION

For the reasons identified above, the Petition for Writ of Habeas Corpus (#5) is denied. The Court does, however, issue a Certificate of Appealability on the issue of whether Petitioner has demonstrated cause and prejudice sufficient to excuse the procedural default of her Ground II claim.

DATED this 1st day of March, 2021.

    */s/ Michael H. Simon*
    Michael H. Simon
    United States District Judge